E. H. ANGLE REGULATING APPLIANCE CO. et al. v. ADERER.

(Circuit Court, S. D. New York. June 23, 1909.)

1. PATENTS (§ 165*)—INFRINGEMENT—FEATURES DISCLOSED, BUT NOT CLAIMED.
   A patentee is entitled to the benefit accruing from a characteristic of his device which is clearly disclosed, although not specifically claimed.
   [Ed. Note.—For other cases, see Patents, Cent. Dig. § 241; Dec. Dig. § 165.*]

2. PATENTS (§ 328*)—INFRINGEMENT—TOOTH-REGULATING DEVICE.
   The Angle patent, No. 626,476, for a tooth-regulating device, was not anticipated, and is valid; also *held* infringed.
   [Ed. Note.—For other cases, see Patents, Dec. Dig. § 328.*]

In Equity. On final hearing.

Joseph C. Fraley and Henry N. Paul, for complainants.
Emilius W. Scherr, Jr., for defendant.

HOUGH, District Judge. Complainants are respectively the owners of and the sole licensees under patent 626,476, issued to Dr. Angle for a "tooth-regulating device." The patentee is admittedly well known to be skilled in the art or science of dentistry, and particularly in that department thereof which seeks to correct by mechanical devices teeth badly placed in the human jaw. This branch of dental science has been termed in argument "orthodontia." When Dr. Angle applied for his patent there were known to the art devices sufficiently represented by Figures 1 and 2 below reproduced.

*Fig. 1.*

*Fig. 2.*

Fig. 1 represents an "artificial arch," fastened outside of the teeth of either jaw by applying rings, 3, to molar teeth on the right and left sides of the mouth, respectively, and adjusting the arch near to and outside the intervening teeth. Obviously this arch, being composed of metal possessing resilience, is under some tension, and this tension

may be increased or diminished, and generally regulated, by the nuts, 5, which, operating upon the screw thread on which they turn, may be used to advance or retract the metal arch as may be desired, and thereby to apply power to any tooth or teeth appropriately fastened to the arch itself by easily conceivable bands or "ligations." Fig. 2 represents a means of applying power to a single tooth, by fastening as before a ring, 6, to a molar, and adjusting the "fish-tail" end against the tooth intended to be moved, and then regulating that power as before by the operation of the nut, 5, upon the screw thread.

The patentee observed that, not only did the malplaced teeth move (as was desired), but the molars used as anchors were not themselves absolutely rigid in the jaw, with the result that the adjusting nuts, 5, would remain where set, as long as a tension or pressure was maintained upon them. Whenever that tension was relieved by tooth movement, the "adjusting nuts were liable to be accidentally moved under the engagement therewith of the tongue or lips of the wearer." It is the intention of the dental operator that the patient wearing one of these devices should return to him from time to time to have the nuts adjusted and to re-establish the proper tension upon the teeth. But it was very desirable not to facilitate a slackening of the entire contrivance by tongue or lip movement upon the nuts in question. Dr. Angle therefore obtained this patent for a device shown by the figure next reproduced.

Fig. 3.

This drawing exhibits the screw thread of the device first above pictured; a nut, 5, as before, and one of the anchor tubes, 2, whose positions on the screw thread are regulated by the nut, 5. But the two nuts, instead of being of the ordinary form, are provided with the "threadless extension," a, which fits into the recess or counter-bore, b. In operation the extension, a, by insertion into the recess or counterbore, b, forms what the patentee calls a "friction sleeve" in telescopic and frictional engagement with the counter-bored anchor tube, 2. The application shows two forms of this friction sleeve, one as in the figure last above reproduced, with the sleeve split axially, $a^1$, and another form in which it is not split. He points out that when the sleeve is not split it must "be made of a size to afford a close fit with the anchor tube." This unsplit form is not preferred by the patentee, but it was admitted at the argument that it is the form which has passed into commercial use.

It is obvious that this device introduces a difficulty or retardation in the movement of the nut upon the screw thread, which is entirely independent of the screw action. The amount of that difficulty will depend upon the amount of friction existing at any given time in the friction sleeve. This friction will arise either from the spring action of

the friction sleeve when split and pressed into the counter-bore, or it will depend merely upon the close adjustment of parts, as when the sleeve is not split, but operates just as one portion of a telescope does upon the other. The usual form of this device is the arch first above represented. The straight jackscrew appears to be less common. In the arch form it is evident that friction in the friction sleeve is increased by the tension of the arch, so that, though the friction sleeve and the counter-bore may fit quite loosely when the apparatus is not in use, the desired result will be attained when it is in use by the tension of the arch when fitted to the jaw. This result is not set forth and is not claimed in the patent, but the form of apparatus which renders it possible is shown, and means by which the successful result is secured are disclosed; for which reasons it seems to me that the patentee is entitled to whatever benefit or advantage may accrue from this characteristic of his patented device, although not by him specifically set forth in his application. Van Epps v. United Box Board & Paper Co., 143 Fed. 869, 75 C. C. A. 77.

The first claim of this patent is as follows:

"1. In a tooth-regulator having extensible parts, an adjusting-nut working on one and reacting against the other of said parts, which nut has an abrupt shoulder that resists the end thrusts or strains, and is provided with a friction sleeve or section that puts the said nut under a friction or tension against rotation, independently of the end strains on the said nut, substantially as described."

The second (and only other) claim specifically covers the axial split above referred to. It is admitted that the novelty of this invention rests only in the friction sleeve, securing the nut against accidental rotation under slight pressure. As applied to a tooth-regulating appliance, it is not denied that the invention is patentable unless anticipated.

It is matter of common knowledge that this branch of dentistry has recently made great advances, and it appears to me from the testimony herein that such advances are quite largely due to regulating devices such as this. The apparatus sold by defendant differs from that of the complainants solely in this: That whereas complainants' apparatus, as shown by the diagrams above reproduced, have a cylindrical friction sleeve, or one at all events cylindrical before a spring action is produced by compression of the split portions of the sleeve, the defendant's appliance possesses a friction extension of the nut, which is obviously slightly conical, and whose counter-bore is split. Whether the friction sleeve or the counter-bore be split is unimportant. The intent of either splitting is to produce a spring action, and defendant cannot escape infringement (nor has he sought to) by this change alone.

The defense, therefore, rests upon the proposition that defendant's conical sleeve is no more than a part of a "jam nut," that jam nuts were well known before this patent, and therefore the defendant has a right to do what he has done. By the testimony of defendant's expert, the best of his references is the Banovits British patent, No. 9,818, of 1891; and, if anticipation is not found there, defendant has not established it. The Banovits patent is for "improvements in and connected with lock nuts." It does not seem to me profitable to enter into

an elaborate discussion of the revelations of the Banovits specification. It is sufficient to say that what Banovits describes in a large variety of forms is a "lock nut," evidently intended for coarse machinery and operations widely differing from those of dental surgery, which lock nut is provided on one side with a conical projection entering into a conoidal boring, into which, by turning the nut, the aforesaid conical projection can be forced until a clamping action takes place. There is nowhere in Banovits' specification any statement that both projection and recess may be cylindrical, so as to permit of a telescoping action, and free insertion of the projection into the recess until the lug of the nut is reached, and even then permitting the revolution of the nut under frictional engagement only of the cylindrical parts; and this is the essence of Angle's invention.

It is not denied that if the defendant's apparatus really is a jam nut on the Banovits principle, it would not infringe; but it is just as true that it would not perform the function of Angle's apparatus. The nut must be readily turnable on the screw thread at the operator's will; but it must not be turnable within its cylindrical recess by the inadvertent tongue action of the wearer. If the nuts jam, it is quite true that the wearer's tongue cannot turn them; but neither can the operator turn them, without releasing the jam, to the disarrangement of the delicate apparatus and the probable great pain of the wearer of the same. An examination of defendant's device, therefore, convinces me that his is not a "jam nut," and that it is a colorable imitation of complainants' mechanism. His conoidal form is just a sufficient departure from a true cylinder to encourage a defense in a patent suit, but not a sufficient departure to produce Angle's result by any other method or in any other manner than that disclosed in Angle's application for his patent.

For these reasons the complainants are awarded a decree as prayed for.